ORIGINAL

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

**DAVID SCOTT**
684 Highway 232
Harned, Kentucky 40144

And

**MISSY SCOTT**
684 Highway 232
Harned, Kentucky 40144

      **Plaintiffs,**

vs.

**ABUBAKAR ATIQ DURRANI, M.D.**
   Orthopedic and Spine Institute
   15-G-I Johar Tower
   Lahore, Pakistan

   8 R Model Tower Ext,
   Lahore, Pakistan

   198-C Jamlabed Chungi,
   Multan, Pakistan
      (Serve via Regular Mail)

And

**CENTER FOR ADVANCED SPINE**
   **TECHNOLOGIES, INC.**
C/O CT Corporation System
1300 East Ninth Street, #1010
Cleveland, Ohio 44144
      (Serve via Certified Mail)

And

**WEST CHESTER HOSPITAL, LLC**
7700 University Drive
West Chester, Ohio 45069

Serve: GH&R BUSINESS SVCS., INC.
511 Walnut Street

NO.    A 1 5 0 6 8 6 5
_____

**COMPLAINT AND JURY DEMAND**

D112932233 INI

FILED

2015 DEC 16 P 3: 18

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH

EXHIBIT A

1900 Fifth Third Center
Cincinnati, Ohio 45202
     (Serve via Certified Mail)

And

UC HEALTH, LLC
Serve: CT Corporation System
1300 East 9th St. Ste 1010
Cleveland, Ohio 44114
     (Serve via Certified Mail)

     Defendants.

Plaintiffs, Ralph David Scott and Missy Scott, by and through counsel, for their Complaint and Jury Demand, against Abubakar Atiq Durrani, M.D., ("Durrani"), Center For Advanced Spine Technologies, Inc. ("CAST"), West Chester Hospital, LLC ("West Chester Hospital") and UC Health, LLC ("UC Health"),[1] state as follows:

## I. INTRODUCTION

1.    This action is brought to redress not only medical negligence by Defendants, but also the persistent failure of the Hospital Defendants to adequately monitor, supervise, and credential the physicians providing patient care at their facilities.

## II. PARTIES

2.    Plaintiff, Ralph David Scott, is a resident of the Commonwealth of Kentucky, who received negligent medical treatment at the hands of Durrani in medical licensed facilities in Ohio controlled and operated by CAST, West Chester Hospital, and UC Health.

---

[1] West Chester Hospital and UC Health are referred to herein as the Hospital Defendants.

2

3.      Plaintiff, Missy Scott is and was a resident of and domiciled in the Commonwealth of Kentucky and at all times herein the wife of Plaintiff Ralph David Scott.

4.      Defendant, Dr. Abubakar Atiq Durrani was the principal member of CAST and was licensed to practice medicine in the State of Ohio. Durrani provided negligent medical services to Plaintiff Ralph David Scott as detailed in this Complaint, was indicted for Medicare fraud, his license to practice medicine in Ohio revoked, and has since fled the jurisdiction of this Court and upon belief is last purported to be outside the jurisdiction of the United States of America in the country of Pakistan.

5.      The Center for Advanced Spine Technologies, Inc. ("CAST"), was an Ohio corporation controlled by Durrani conducting business in this state and county that can be served via CT Corporation System, 1300 East Ninth Street, #1010, Cleveland, Ohio 44144.

6.      West Chester Hospital, LLC, is an Ohio limited liability company whose agent for service of process is GH&R Business Services, Inc., 511 Walnut Street 1900 Fifth Third Center, Cincinnati, OH, 45202.

7.      UC Health, LLC is an Ohio limited liability corporation whose agent for service of process is GH&R Business Services, Inc., 511 Walnut Street 1900 Fifth Third Center, Cincinnati, OH. 45202. UC Health owns and operates West Chester Hospital and conducts business in this county.

### III.  JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter in that Defendants conduct business in the State of Ohio and medical services were provided to Plaintiff in the State of Ohio.

3

9.    The Court has personal jurisdiction over Defendants in that Defendants provided medical services to Plaintiff in the State of Ohio and the Hospital Defendants are incorporated in the State of Ohio.

10.    Venue is proper pursuant to Civil Rule 3 in that one or more of the Defendants reside and conduct business in this county.

11.    The amount in controversy exceeds the jurisdictional threshold of this Court.

## IV. FACTS

### A.    Facts Relating to Plaintiff's Treatment.

12.    In 2005, Plaintiff Ralph David Scott first received medical care and treatment from Defendant Durrani.

13.    In October 2006, Durrani performed spine surgery on Plaintiff Ralph David Scott at Christ Hospital, fusing L5-S1.

14.    Several weeks after the October 2006 surgery, Plaintiff Ralph David Scott began to suffer severe pinching in his lower back and unresolved and worsening pain.

15.    In April 2008, Durrani performed another spine surgery on Plaintiff Ralph David Scott at Christ Hospital, fusing C6-C7, and inserting hardware.

16.    After this 2008 surgery, Plaintiff Ralph David Scott continued to suffer upper and middle back pain and unresolved and worsening numbness, tingling and extremity pain.

17.    In December 2009, Durrani advised Plaintiff Ralph David Scott that immediate spine surgery was required to fuse T6-10.

18.    Durrani scheduled Plaintiff Ralph David Scott for T6-T10 spine surgery on January 25, 2010 and did not warn or inform the Plaintiff that the Defendants intended

4

to use the controversial bone graft material, BMP-2 (bone morphogenetic protein) in the T6-T10 surgery.

19.     Thereafter, Plaintiff Ralph David Scott was admitted to UC Health's West Chester Hospital and underwent surgery on or about January 25, 2010.

20.     Medtronic Infuse BMP-2 was used by Defendants on Plaintiff Ralph David Scott on January 25, 2010 without his consent.

21.     Conservative treatment options were not considered or provided to Plaintiff Ralph David Scott by the Defendants prior to the January 25, 2010 surgery, he was not properly informed by Defendants of the surgical technique that was to be utilized, including the use of BMP-2, nor was he advised of the risks associated with BMP-2 or the other surgical techniques that would be performed by Defendants.

22.     Thereafter, Plaintiff Ralph David Scott was discharged from West Chester Hospital on or about January 28, 2010.

23.     Plaintiff Ralph David Scott continued to experience spinal related pain and suffering after this surgery, and thereafter sometime in October 2010, Durrani advised Ralph David Scott that immediate spine surgery was now required to fuse C7-T1.

24.     Thereafter, Durrani scheduled the Plaintiff for spine surgery to fuse C7-T1 for September 8, 2010.

25.     For the September 8, 2010 surgery, Defendants did not warn, or inform Plaintiff Ralph David Scott that Durrani intended to use the controversial bone graft material, BMP-2 (bone morphogenetic protein) in the C7-T1 surgery.

26.     Thereafter, Plaintiff Ralph David Scott was admitted to UC Health West Chester and underwent surgery on or about September 8, 2010.

27. Thereafter, Medtronic Infuse BMP-2 was used on Plaintiff Ralph David Scott without his consent on September 8, 2010.

28. Upon information and belief, a Medtronic sales representative was present on September 8, 2010, when Defendants improperly used BMP-2 on Plaintiff Ralph David Scott.

29. Conservative treatment options were not considered or provided to Plaintiff Ralph David Scott by the Defendants prior to the surgery on September 8, 2010, Plaintiff was not properly informed by Defendants of the surgical technique that was to be utilized, including the use of BMP-2, nor was Plaintiff advised of the risks associated with BMP-2 or the other surgical techniques that would be performed by Defendants with the surgery on September 8, 2010.

30. Plaintiff Ralph David Scott was discharged from West Chester Hospital on or about September 9, 2010.

31. Plaintiff Ralph David Scott continued to experience spinal related pain and suffering.

32. Sometime thereafter in November 2010, Durrani advised Plaintiff Ralph David Scott that spine surgery was now required immediately to fuse L4-L5.

33. Durrani scheduled Plaintiff Ralph David Scott for spine surgery on December 6, 2010.

34. Plaintiff Ralph David Scott was not warned or informed by the Defendants that Durrani intended to use the controversial bone graft material, BMP-2 (bone morphogenetic protein) in the L4-L5 fusion surgery scheduled for December 6, 2010.

35. Plaintiff Ralph David Scott was admitted to UC Health West Chester and underwent surgery on or about December 6, 2010.

6

36.     Defendants used Medtronic Infuse BMP-2 on Plaintiff Ralph David Scott without his consent during the surgery on December 6, 2010.

37.     Upon information and belief, a Medtronic sales representative was present on December 6, 2010, when Defendants improperly used BMP-2 on Plaintiff Ralph David Scott without his consent.

38.     Conservative treatment options were not considered or provided to the Plaintiff Ralph David Scott by the Defendants prior to the December 6, 2010 surgery, Plaintiff was not properly informed by Defendants of the surgical technique that was to be utilized, including the use of BMP-2, nor was Plaintiff advised of the risks associated with BMP-2 or the other surgical techniques that would be performed by Defendants.

39.     Plaintiff Ralph David Scott was discharged from West Chester Hospital on or about December 7, 2010.

40.     Thereafter Plaintiff Ralph David Scott continued to experience spinal related pain and suffering.

41.     Durrani advised Plaintiff Ralph David Scott sometime in August, 2011, that immediate spine surgery was now required to fuse C1-C2.

42.     Thereafter Durrani scheduled Plaintiff Ralph David Scott for spinal fusion surgery.

43.     Plaintiff Ralph David Scott was not warned or informed by the Defendants that Durrani intended to use the controversial bone graft material, BMP-2 (bone morphogenetic protein) in the C1-C2 fusion surgery scheduled for September 9, 2011.

44.     Plaintiff Ralph David Scott was admitted to UC Health West Chester and underwent spinal fusion surgery on or about September 9, 2011.

7

45.    Defendants used Medtronic Infuse BMP-2 on Plaintiff Ralph David Scott without his consent during the surgery on September 9, 2011.

46.    Defendants placed a metal screw in Plaintiff Ralph David's spinal area during the C1-C2 fusion surgery that caused Plaintiff Ralph David Scott to suffer a stroke during the surgery and place him in a life and death situation during and after the surgery.

47.    Conservative treatment options were not considered or provided to the Plaintiff Ralph David Scott by the Defendants prior to the September 9, 2011 surgery, Plaintiff was not properly informed by Defendants of the surgical technique that was to be utilized, including the use of BMP-2, nor was Plaintiff advised of the risks associated with BMP-2 or the other surgical techniques that would be performed by Defendants.

48.    Plaintiff Ralph David Scott was discharged from West Chester Hospital on or about September 10, 2011.

49.    Defendants never advised Plaintiff of the risks associated with the use of BMP-2/Infuse®.  Durrani did not note the use of BMP-2/Infuse® in his Operative Report.

50.    Infuse® is a dangerous medical device that is contraindicated for use in the cervical spine.  Defendants were fully aware that Durrani routinely employed Infuse® in situations in which it was contraindicated.

51.    Upon information and belief, Durrani's spinal surgeries performed on Plaintiff Ralph David Scott on or about January 25, 2010, September 8, 2010, December 6, 2010 and September 9, 2011 included the services and assistance of other physicians, nurses, agents, ostensible agents, servants and/or employees of West Chester Medical Center, Inc., UC Health and/or Center For Advanced Spine Technologies, Inc.

8

## B.    West Chester Hospital and UC Health.

52.    UC Health and West Chester Hospital held themselves out to the public as health care providers having the facilities, competence, staff and trained personnel to examine, diagnose, advise and treat patients like Plaintiff.

53.    UC Health and West Chester Hospital, maintained employees, staff, agents, and/or apparent agents, including but not limited to, Durrani and CAST, all of whom assisted in the delivery of medical services in operation of UC Health and West Chester Hospital's facilities.  UC Health and West Chester Hospital exercised exclusive jurisdiction and control over the procedures which allow their employees, staff, agents, and/or apparent agents to have privileges to perform medical care and treatment.  UC Health and West Chester Hospital further exercised jurisdiction and control over the determination of qualifications, or lack of qualifications, of said employees, staff, agents, and/or apparent agents.

54.    UC Health and West Chester Hospital were Medicaid and Medicare providers and received payment from the Federal Government (Medicaid and/or Medicare) for services rendered to patients at their facilities.

55.    UC Health and West Chester Hospital were required to comply with the Code of Federal Regulations -- specifically 42 CFR 482 – "Conditions of Participation for Hospitals" -- which pertain to hospitals like UC Health and West Chester Hospital. The Code of Federal Regulations required, in part, that UC Health and West Chester Hospital provide adequate and appropriate nursing, anesthesia, surgical care, and services. *See*, 42 CFR 482 Part C.

56.     UC Health and West Chester Hospital, and its employees, staff, agents, and/or apparent agents were required to provide adequate and appropriate treatment and services to its patients, including but not limited to surgical and orthopedic services.

57.     UC Health and West Chester Hospital granted privileges to Durrani, thereby allowing him to provide spinal care to patients at UC Health and West Chester Hospital.

58.     Durrani, agreed to abide by all of the standards of UC Health and West Chester Hospital, as described by its Bylaws.

59.     Durrani, also agreed to abide by the Medical Staff Bylaws, Rules & Regulations, and the policies set forth by the Board of Directors of UC Health and West Chester Hospital.

60.     UC Health and West Chester Hospital had control and/or the right to control Durrani's hospital practice in many ways, including but not limited to:

    a.     The hours that Durrani and CAST could practice;

    b.     The method in which Durrani and CAST could assist in the delivery of medical services;

    c.     The medications, medical devices, and facilities available for Durrani and CAST's use;

    d.     The requirement that Durrani participate in meetings and abide by hospital protocol, policies and procedures, Bylaws, Rules & Regulations of UC Health West Chester Hospital;

    e.     The power to fire them;

    f.     The right to limit their privileges;

g. The right to supervise them as they provided medical services, as well as the right to require a proctor or mentor to oversee the delivery of their health care; and,

h. The final say on how the actual delivery of medical services and care is delivered.

61. The health care providers who provided care to Plaintiff were the apparent agents of UC Health and West Chester Hospital and were acting in the course and scope of that agency and in the furtherance of their business pursuits. Specifically UC Health and West Chester Hospital held out to the public that:

a. They offered specialized services designed specifically to meet the unique needs of spinal patients;

b. They publicly referred to Doctors and nurses as "our team of " spinal specialists;

c. They provided the medical services of its facilities and Defendants Durrani and CAST to Plaintiffs; and,

d. Plaintiffs accepted the medical services of UC Health and West UC Health and West Chester Hospital, described above, accepted the services of Defendants, and believed that the Defendants were in an agency relationship, and relied on the appearance and representation of such, as well as the reputation of UC Health and West Chester Hospital.

62. Durrani was a licensed physician who provided medical care to Ralph David Scott.

63. Durrani was an actual agent and apparent agent of UC Health and West Chester Hospital, and was an employee of CAST. The services Durrani provided to the

Plaintiff were in his capacity as an actual agent and apparent agent of UC Health and West Chester Hospital and as an employee of CAST.

## V. CLAIMS

### A.  COUNT 1 – NEGLIGENCE/GROSS NEGLIGENCE (As to All Defendants)

64.  Plaintiffs hereby incorporate by reference all of the allegations and averments set forth above as if fully rewritten herein.

65.  In 2005, Plaintiff Ralph David Scott first received medical care and treatment from Defendant Durrani.

66.  In October 2006, Durrani performed spine surgery on Plaintiff Ralph David Scott at Christ Hospital, fusing L5-S1.

67.  Several weeks after the October 2006 surgery, Plaintiff Ralph David Scott began to suffer severe pinching in his lower back and unresolved and worsening pain.

68.  In April 2008, Durrani performed another spine surgery on Plaintiff Ralph David Scott at Christ Hospital, fusing C6-C7, and inserting hardware.

69.  After this 2008 surgery, Plaintiff Ralph David Scott continued to suffer upper and middle back pain and unresolved and worsening numbness, tingling and extremity pain.

70.  In December 2009, Durrani advised Plaintiff Ralph David Scott that immediate spine surgery was required to fuse T6-10.

71.  Defendants had a duty to exercise the degree of skill, care and diligence a reasonably competent health care provider, medical group, or hospital, engaged in similar practice and similar circumstances, would use.

72.     Defendants breached that duty and were negligent or grossly negligent in their care and treatment of Plaintiff and deviated from the appropriate standard of medical care in one or more of the following particulars:

a.     failure to properly assess Plaintiff's need for surgery;

b.     failure to properly and competently perform the surgery undertaken on Plaintiff;

c.     failure to recommend alternative medical therapy or another non-surgical course of action;

d.     failure to properly interpret and assess Plaintiff's need for the installation of hardware utilized during the surgery and implanting a medical device that was not medically indicated or necessary;

e.     failure to obtain proper informed consent; and,

f.     failure to comply with applicable standards of care in the circumstances presented and were otherwise negligent and careless.

73.     As a direct and proximate result of the Defendants' negligence and gross negligence and deviation from the standard of care, Plaintiff suffered harm and sustained injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

## B.     COUNT 2 – NON-DELEGABLE DUTY (As to Hospital Defendants)

74.     Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

75. Hospital Defendants have a non-delegable duty to provide Medical care by law. Hospital Defendants undertook a duty when agreeing to provide physicians and staff for the care at West Chester Hospital, and with respect to the delivery of medical care to Plaintiff. Because of this undertaking by Hospital Defendants, a non-delegable duty arose and was undertaken by Hospital Defendants, to provide treatment. This non-delegable duty also exists pursuant to 42 CFR 482. Therefore, Hospital Defendants had the non-delegable duty to provide such care and services to Ralph David Scott.

76. Hospital Defendants operated a hospital licensed under Ohio Statutes, which held itself out to the public as one of the area's premier, full-service hospitals specializing in providing the highest quality spinal care services of the type required by Plaintiff.

77. Hospital Defendants were licensed by the State of Ohio and the Ohio hospital licensing and regulation statutes and administrative rules, codes, and regulation imposed upon Hospital Defendants a non-delegable duty to provide appropriate and reasonable care to its patients of West Chester Hospital, including Plaintiff.

78. Hospital Defendants were a Medicare and Medicaid provider and received payment from the Federal government (Medicare and/or Medicaid) for services rendered to patients at its facility.

79. Hospital Defendants undertook a duty to treat Plaintiff for a charge, and furnished medical services, to render that treatment. Hospital Defendants approved the personnel who would be providing and assisting in the provision of medical services, to Plaintiff and employed, granted staff privileges to, and/or paid Durrani and CAST to perform those services. The duties assumed by and/or imposed upon Hospital

Defendants to provide medical services, are non-delegable and, as a matter of law, impose liability upon Hospital Defendants for the negligent performance of such duties by Durrani and CAST.

80.   As a Medicare/Medicaid provider (that is, a hospital accepting Medicare/Medicaid from the Federal government) Hospital Defendants were subject to the rules and regulations promulgated under 42 CFR 482, 51 Fed Reg 116 (1986), 22015, which govern the conditions of participation for hospitals and impose a non-delegable duty on those participating hospitals.

81.   Specifically, pursuant to 42 CFR 482.12(e), Hospital Defendants were responsible for the safe and effective delivery of services furnished in the hospital, even if furnished under contracts with those labeled independent contractors.

82.   The non-delegable duty imposed by 42 CFR 482 encompasses the acts or omissions of Durrani and CAST, and other hospital personnel. Hospital Defendants breached the statutory/regulatory non-delegable duty to Plaintiffs to provide safe and effective delivery of surgical services.

83.   As a direct and proximate result of the Hospital Defendants' violation of the non-delegable duty of care, Plaintiff suffered harm and sustained injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

## C.   COUNT 3 – LACK OF INFORMED CONSENT (As to All Defendants)

84.   Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

85.     Defendants were under a duty to provide Plaintiff with informed consent before subjecting him to surgery and the implantation of medical devices, including but not limited to disclosure of material information regarding the risks, benefits, and alternatives to the proposed treatment, and disclosure that the risks of such treatment in his particular circumstances exceeded any possible benefit.

86.     Defendants failed to provide such informed consent, and instead concealed material facts about the condition of Plaintiff and about the necessity (or lack thereof) or surgery and the implantation of medical devices.

87.     As a direct and proximate result of the Defendants' failure to secure Plaintiff's informed consent, Plaintiff suffered harm and sustained injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

## D.     COUNT 4 – NEGLIGENT MISREPRESENTATION (As to All Defendants)

88.     Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

89.     Defendants, owing a duty of care to Plaintiff, negligently misrepresented and concealed the condition of his spine and medical condition and negligently misrepresented that he would benefit from surgery.

90.     Defendants intended that Plaintiff would rely upon and act upon their misrepresentations and concealment by consenting to undergo surgery.

91.     Defendants knew that Plaintiff would rely upon their negligent medical advice, and they knew that Plaintiff would have opted to not undergo surgery if Plaintiff

16

had been provided accurate medical information regarding his condition and the proposed procedures.

92.     Plaintiff's reliance on Defendants' misrepresentations and concealment was reasonable and justified, as they are healthcare providers with far greater knowledge of the relevant subject and far superior access of the information underlying the misrepresentations and concealment.

93.     As a result of Defendants' misrepresentations, Plaintiff suffered harm as set forth above.

**E.     COUNT 5 – FRAUD AND FRAUDULENT CONCEALMENT (As to All Defendants)**

94.     Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

95.     Defendants performed unnecessary and contraindicated surgery on Plaintiff.

96.     Likewise, Defendants fraudulently concealed from the patient that his medical condition rendered the surgery improper and unnecessary.

97.     Defendants also concealed their pattern and practice of subjecting patients to such unnecessary and medically inappropriate supplies, devices, and procedures. Defendants concealed these facts despite being under a duty to disclose them.

98.     Defendants' false concealment of material information was made knowingly and/or with reckless disregard for its truth.

99.     The fraudulent concealing of material information was intended to induce Plaintiff to consent to the performance of the surgery and/or to refrain from objecting to those procedures.

100. Defendants' misrepresentations and concealment were material to Plaintiff's consent to the surgery.

101. Plaintiff justifiably and reasonably relied on Defendants' misstatements and concealment – all done in the context of the healthcare provider-patient relationship of trust and confidence – in agreeing to undergo the unnecessary procedure. But for Defendants' misrepresentations and concealment, Plaintiff would not have consented to the surgery.

102. As a direct, proximate and foreseeable result of Defendants' false and fraudulent representations, Plaintiff suffered harm as set forth above.

**F. COUNT 6 – NEGLIGENT HIRING, SUPERVISION, CREDENTIALING (As to West Chester Hospital and UC Health)**

103. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

104. Durrani and other doctors involved in the unnecessary procedures performed on Plaintiff were the actual agents, ostensible agents, servants or apparent employees of the Hospital Defendants.

105. Hospital Defendants granted hospital privileges to the physicians involved in Plaintiff's care, authorizing them to perform medical procedures including the services, treatment and surgery rendered to Plaintiff.

106. Hospital Defendants owed a duty to Plaintiff to train, supervise, credential, and privilege employees who were competent for the position and to supervise those employees in a reasonable manner.

107. Hospital Defendants had actual and/or constructive knowledge of its employees' pattern and practice of ordering and performing unnecessary and medically inappropriate procedures, and failure to disclose such information to Plaintiff.

108. Hospital Defendants failed to use reasonable care in hiring, supervising, credentialing, privileging, and retaining its employees.

109. Hospital Defendants deliberately failed to inquire, probe or examine the competency and conduct of its employees because Hospital Defendants profited and were enriched by their misconduct.

110. Hospital Defendants had an obligation to properly administer a program of quality control. Proper quality control would have resulted in stricter supervision of its employees and would have prevented Plaintiff from being subjected to medically unnecessary procedures.

111. As a direct, proximate and foreseeable result of the negligence of Hospital Defendants in hiring, credentialing, privileging and retaining its employees, Plaintiff suffered harm as set forth above.

**G. COUNT 7 – CIVIL CONSPIRACY (As to All Defendants)**

112. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

113. Defendants, by agreement among themselves, knowingly and unlawfully provided medical facilities and assistance, including billing services, needed to perform and did in fact perform the unnecessary, non-indicated and unlawful procedures on Plaintiff and others.

114. In furtherance of their conspiracy, Defendants conceived of and implemented a common scheme to engage in repeated, unnecessary medical procedures and unfair and deceptive acts.

115. Defendants participated and furthered this conspiracy through their individual and concerted actions. Namely, Defendants acted in concert with each other and pursuant to a common design which conduct constitutes a violation of the law of the State of Ohio. Each Defendant knew that the other's conduct was unlawful and gave substantial assistance or encouragement to the other to so conduct itself; and, gave substantial assistance to the other in accomplishing a tortious result.

116. As a result of their agreement to act in concert, Defendants are jointly and severally responsible for the damage to Plaintiffs.

117. As a direct and proximate result of the agreement or understanding among Defendants, Plaintiff suffered harm as described above.

**H. COUNT 8 – BATTERY (As to Defendant Durrani)**

118. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

119. At all times material hereto, Durrani represented to Plaintiff that surgery was necessary, when in fact Durrani knew that their representations were medically unnecessary and harmful to Plaintiff.

120. Durrani performed unnecessary and unlawful medical procedures on Plaintiff.

121. These unnecessary and unlawful procedures necessarily required the Durrani to physically touch and operate on Plaintiff.

122. Had Durrani represented to Plaintiff that the procedures were in fact not necessary, he would not have given consent for the touching necessary for the performance of the procedures.

123. As a result of Durrani's unlawful touching, Plaintiff suffered harm as set forth above.

**I.     COUNT 9 – FRAUD (As to All Defendants)**

124. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

125. Durrani made material, false representations to Plaintiffs and their health care payor, both before and after the September 9, 2011 surgery, related to his care and treatment.

126. Such false representations include, inter alia, stating that the surgery was imminently necessary; that further conservative treatment was unnecessary and futile; that the surgery would be simple; that the surgery was routine; that the surgery was not experimental; that the procedures and surgery billing to Plaintiffs and their health care payor were accurate and medically indicated; and that the surgery was successful; that the pre-surgical radiologic films indicted spinal structural instability.

127. Durrani knew or should have known such representations were false, and Durrani made the misrepresentations with disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

128. CAST, West Chester Hospital, and UC Health knew – through either actual knowledge or through reckless disregard of the facts – that Durrani routinely made false misrepresentations to individuals to induce them to undergo surgery and purchase

supplies and devices from CAST, West Chester Hospital, and UC Health which were unnecessary or contraindicated.

129. Durrani made these misrepresentations, among others, with the intent of misleading Plaintiffs into relying upon them.

130. Plaintiffs justifiably relied upon the material misrepresentations of Durrani when making the decision to undergo surgery.

131. As a direct and proximate result of the aforementioned, Plaintiff did undergo surgery which was paid for in part by their health care payor, and Plaintiffs sustained grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

## J.   COUNT 10 – VICARIOUS LIABILITY AND AGENCY BY ESTOPPEL (As to West Chester Hospital and UC Health)

132. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

133. West Chester Hospital and UC Health, their agents, employees, representatives, nurses, residents, doctors, contractors or subcontractors, Dr. Durrani, and CAST are liable to Plaintiffs pursuant to respondeat superior and agency by estoppel for the torts of its employees and/or agents.

134. West Chester Hospital and UC Health are liable for the negligence of their agents, employees, representatives, nurses, residents, doctors, contractors or subcontractors and physicians who are not its employees by virtue of their holding

themselves out to the public as being a provider of medical services, and Plaintiffs had no knowledge, actual or implied, to the contrary.

135.    Plaintiffs relied upon the representation, advertising, and publicity offered by Defendants that the hospital would provide competent care but which representations were not true.

136.    West Chester Hospital and UC Health are estopped from claiming that their agents, employees, representatives, nurses, residents, doctors, contractors or subcontractors, the physicians and specifically Dr. Durrani are independent contractors and said Defendants are estopped from asserting other Defendants' responsibility for Plaintiff's injuries as a defense.

137.    As a direct and proximate result of the aforementioned, Plaintiffs sustained grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

### K.    COUNT 11 – VIOLATIONS OF OHIO CONSUMER SALES PRACTICES ACT ("CSPA") (As to CAST, West Chester Hospital, and UC Health)

138.    Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

139.    The CSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions. Ohio Rev. Code. Ann. § 1345.02(A).

140.    Plaintiff is a "person" within the meaning of CSPA, § 1345.01(B).

141.    Plaintiff is a "consumer" within the meaning of CSPA, § 1345.01(D).

142.   CAST, West Chester Hospital, and UC Health are "suppliers" within the meaning of CSPA, § 1345.01(c).

143.   Plaintiff purchased services and medical devices and supplies from West Chester Hospital and UC Health.   These transactions are "consumer transactions" within the meaning of the CSPA, § 1345.01(A).

144.   CAST, West Chester Hospital, and UC Health engaged in unfair, deceptive, and unconscionable practices in holding themselves out as safe and competent providers of spinal surgery and related medical devices and services.

145.   Plaintiff suffered actual damages as a result of the unfair, deceptive, and unconscionable practices of CAST, West Chester Hospital, and UC Health.

146.   Pursuant to CSPA, § 1345.09, Plaintiff seeks monetary relief against CAST, West Chester Hospital, and UC Health measured as three times actual damages in an amount to be determined at trial.

147.   Plaintiff also seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the CSPA.

## L.   COUNT 12 – VIOLATIONS OF OHIO PRODUCT LIABILITY LAW (As to West Chester Hospital and UC Health)

148.   Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

149.   Upon information and belief and at all relevant times herein BMP-2/Infuse® is a product as defined under ORC § 2307.71(A)(15) and applicable law.

150.   Upon information and belief and at all relevant times herein Defendants West Chester Hospital and UC Health were non-manufacturer suppliers of BMP-

2/Infuse® as defined under ORC § 2307.71(A)(12) and applicable law to Defendant Dr. Durrani and use on the Plaintiff.

151.  Upon information and belief, West Chester Hospital and UC Health, as a supplier, failed to maintain Infuse/BMP-2 properly.

152.  Upon information and belief, West Chester Hospital and UC Health did not adequately supply all components required to use either Infuse/BMP-2 properly.

153.  Upon information and belief, West Chester Hospital and UC Health knew or should have known the FDA requirements and Medtronic's requirements for using either Infuse/BMP-2.

154.  Upon information and belief, West Chester Hospital and UC Health stored either Infuse/BMP-2 at its facility.

155.  Upon information and belief, West Chester Hospital and UC Health ordered either Infuse/BMP-2 for surgery performed by Durrani.

156.  Upon information and belief, West Chester Hospital and UC Health did not adequately warn Plaintiff that Infuse/BMP-2 would be used without all FDA and manufacturer required components.

157.  Upon information and belief, West Chester Hospital and UC Health did not gain informed consent from Plaintiff for the use of Infuse/BMP-2, let alone warn of the supplying of the product without FDA and manufacturer requirements.

158.  Upon information and belief, West Chester Hospital and UC Health failed to supply either Infuse/BMP-2 (aka product) in the manner in which it was represented.

159.  Upon information and belief, West Chester Hospital and UC Health failed to provide any warning or instruction in regard to Infuse/BMP-2, and failed to make sure any other party gave such warning or instruction.

160.    Plaintiffs suffered physical, financial, and emotional harm due to West Chester Hospital and UC Health's violation of the Ohio Products Liability Act and applicable products liability law.

161.    Plaintiff's injuries were a foreseeable risk.

162.    Plaintiff did not alter, modify or change the product, nor did Plaintiff know that the product was being implanted without all required components.

163.    Upon information and belief, West Chester Hospital and UC Health knew or should have known that the product was extremely dangerous and should have exercised care to provide a warning that the product was being used and that the product was being used outside FDA and manufacturer requirements. The harm caused to Plaintiff by not providing an adequate warning was foreseeable.

164.    Upon information and belief, West Chester Hospital and UC Health knew that the product did not conform to the representation of the intended use by the manufacturer yet permitted the product to be implanted into Plaintiff.

165.    Upon information and belief, West Chester Hospital and UC Health, as a supplier, acted in an unconscionable manner in failing to supply the product without all FDA and manufacturer required components.

166.    Upon information and belief, West Chester Hospital and UC Health, as a supplier, acted in an unconscionable manner in failing to warn Plaintiffs that the product was being supplied without all FDA approval and manufacturer required components.

167.    Upon information and belief, West Chester Hospital and UC Health 's actions demonstrate they took advantage of the Plaintiffs inability, due to ignorance of

26

the product, to understand the product being implanted without FDA approval and manufacturer required components.

168. Upon information and belief, West Chester Hospital and UC Health substantially benefited financially by the use of the product as the product allowed for Defendant(s) to charge more for the surgery.

169. Upon information and belief, West Chester Hospital and UC Health were negligent and that, negligence was a proximate cause of harm for which plaintiff seek to recover compensatory damages.

170. Alternatively, Infuse®/BMP-2 product did not conform, when it left the control of West Chester Hospital and UC Health, to a representation made by West Chester Hospital and UC Health, and that representation and the failure to conform to it were a proximate cause of harm for which the plaintiffs seek to recover compensatory damages.

171. Alternatively, West Chester Hospital and UC Health altered, modified, or failed to maintain the Infuse®/BMP-2 product after it came into the possession of, and before it left the possession of West Chester Hospital and UC Health, and the alteration, modification, or failure to maintain that product rendered it defective, thus subjecting West Chester Hospital and UC Health to the same liability as if it were the manufacturer of the Infuse®/BMP-2 product, pursuant to R.C. § 2307.78(B)(6).

172. West Chester Hospital and UC Health violated the Ohio Products Liability Act R.C. §2307.71-2307.80 and applicable product liability law.

173. West Chester Hospital and UC Health violated R.C. § 2307.7 l (A)(6) and applicable product liability law.

174.   West Chester Hospital and UC Health provided inadequate warnings as defined in R.C, § 2307.76(A) and applicable product liability law.

175.   Plaintiffs suffered economic loss as defined in R.C. § 2303.71(A)(2) and applicable law.

176.   Plaintiffs suffered mental and physical harm due to West Chester Hospital and UC Health's acts and omissions.

177.   Plaintiffs suffered emotional distress due to acts and omissions of West Chester Hospital and UC Health and are entitled to recovery as defined in R.C, § 2307.71(A)(7) and applicable law.

178.   As a direct and proximate result of the aforementioned, Plaintiff did undergo surgery on September 9, 2011, which was paid for in part by their insurance company, and Plaintiffs sustained grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

## M.   COUNT 13 – LOSS OF CONSORTIUM (As to All Defendants)

179.   Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

180.   At all times relevant, Plaintiffs Ralph David Scott and Missy Scott were married.

181.   That as a result of the wrongful and negligent acts of each of the Defendants, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

182. That all the aforesaid injuries and damages were proximately caused by the negligence of the Defendants.

### N. COUNT 14 – PUNITIVE AND EXEMPLARY DAMAGES (As to All Defendants)

183. Plaintiffs incorporate as if fully restated herein, the allegations contained in each of the preceding paragraphs.

184. At all times relevant herein, the Defendants actions were willful, wanton and grossly negligent toward the Plaintiffs.

185. That as a result of the Defendants intentional, willful, wanton, malicious and grossly negligent conduct, the Plaintiffs are entitled to recover punitive and exemplary damages and attorneys' fees from the Defendants in an amount to be determined by the jury at trial.

### VI. DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs, Ralph David Scott and Missy Scott, husband and wife, by and through counsel, demand judgment against the Defendants on all claims for the following relief:

1. Compensatory damages in an amount to be determined by the trier of fact;

2. Punitive or exemplary damages in an amount to be determined by the trier of fact and any adverse jury instructions in support of such claims;

3. Pre-judgment and post-judgment interest as allowed by law;

4. Joint and several liability;

5. Medical monitoring and payment of all subrogation claims;

6. Reasonable attorney fees;

7. Any and all costs taxed to the Defendants for this civil action;

8.  Trial by jury of any and all issues so triable;

9.  A finding that the Plaintiffs' injuries are catastrophic under Ohio Revised Code Section 2315.18; and,

10. Any and all other relief to which Plaintiffs may be entitled.

## VII. JURY DEMAND

Plaintiffs demand a trial by jury in this matter.

DATED this 16th day of December, 2015.

By: _____

Robert R. Sparks (0073573)
STRAUSS TROY CO., LPA
150 EAST FOURTH STREET
Cincinnati, Ohio 45202
(513) 621-2120 Telephone
(513) 241-8259 Facsimile
*rrsparks@strausstroy.com* Email

and

Nicholas M. Nighswander (0020772)
7289 Burlington Pike
Florence, Kentucky 41042
(859) 746-1259 Telephone
(859) 746-1259 Facsimile
*nicklaw@fuse.net* Email

and

Christian B. Stegeman (0027089)
1616 Clio Avenue
Cincinnati, Ohio 45230
(513) 205-0461 Telephone
*Stegeman_chris@gmail.com* Email

*Trial Attorneys for Plaintiffs,*
*Ralph David Scott and Missy Scott*

4263543_1.doc

30

```
                        COURT OF COMMON PLEAS
                        HAMILTON COUNTY, OHIO
```

DAVID SCOTT
    **PLAINTIFF**

                                           Use below number on
                                           all future pleadings

      -- vs --

                                      No.  A 1506865
                                           SUMMONS

ABUBAKAR ATIQ DURRANI M D
    **DEFENDANT**

        UC HEALTH LLC
        % CT CORPORATION SYSTEM                  D - 4
        1300 EAST 9TH ST STE 1010
        CLEVELAND OH 44114

You are notified
that you have been named Defendant(s) in a complaint filed by

        DAVID SCOTT
        684 HIGHWAY 232
        HARNED KY 40144

                                             Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**TRACY WINKLER, 1000 MAIN STREET   ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney             TRACY WINKLER
ROBERT R SPARKS                     Clerk, Court of Common Pleas
150 EAST FOURTH STREET              Hamilton County, Ohio
CINCINNATI       OH     45202

                          By  RICK HOFMANN
                                      Deputy

                          Date:  December 17, 2015

D112938482

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


DAVID SCOTT
    **PLAINTIFF**

                                                  Use below number on
                                                  all future pleadings

     -- vs --
                                            No.  A 1506865
                                                 SUMMONS

ABUBAKAR ATIQ DURRANI M D
    **DEFENDANT**


     WEST CHESTER HOSPITAL LLC
     % GH&R BUSINESS SVCS INC                D - 3
     511 WALNUT ST
     CINCINNATI OH 45202


You are notified
that you have been named Defendant(s) in a complaint filed by

     DAVID SCOTT
     684 HIGHWAY 232
     HARNED KY 40144

                                                 Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**TRACY WINKLER, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney            TRACY WINKLER
ROBERT R SPARKS                       Clerk, Court of Common Pleas
150 EAST FOURTH STREET                 Hamilton County, Ohio
CINCINNATI      OH     45202

                           By  RICK HOFMANN
                                        Deputy


                         Date:   December 17, 2015

D112938470